UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 08-50050 |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPORT AND |
| vs. | ) | RECOMMENDATION ON |
| | ) | DEFENDANT'S MOTION TO |
| MARK COTTIER, | ) | SUPPRESS [DOCKET 23] |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter is before the court pursuant to an indictment charging defendant Mark Cottier  with assault with a dangerous weapon and assault resulting in serious bodily injury that allegedly occurred on September 27, 2007, involving Charlene Gladys Byrd.  Mr. Cottier moves the court to suppress statements made during four interviews with various law enforcement agents on the ground that his statements were taken in violation of Miranda[1].

The government resists Mr. Cottier's motion as to statements taken on two of the occasions, and indicates that it does not intend to introduce any statements made on the other two occasions.  Mr. Cottier's motion to suppress was referred to this magistrate judge for a report and recommendation

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

pursuant to Chief Judge Karen E. Schreier's standing order dated June 11, 2007, and 28 U.S.C. § 636(b)(1)(B).

## FACTS

An evidentiary hearing on Mr. Cottier's motion was held on Wednesday, January 28, 2009.  Mr. Cottier and his attorney, Assistant Federal Public Defender George Grassby, were present as was the attorney for the government, Assistant United States Attorney Robert Mandel.  Two witnesses testified in person at the hearing:  Special Agent Charles Cresalia of the Federal Bureau of Investigation ("FBI"), and Special Agent Mitchell Pourier with the Bureau of Indian Affairs ("BIA").  The court finds the following facts from the evidence presented at the hearing.

Mr. Cottier was interviewed concerning the crimes alleged in the indictment on four occasions: (1) on October 3, 2007, at the Kyle Correctional Facility by Mitch Pourier; (2) on November 29, 2007, at the Pine Ridge Adult Correctional Facility by Agent Cresalia and Agent Pourier together; (3) on January 30, 3008, at Mr. Cottier's home in Sharps Housing by Agent Cresalia; and (4) on January 30, 2008, at the Kyle Juvenile Detention Center by FBI Agent Kelly Kenser.

The government resists Mr. Cottier's motion to suppress as to the October 3, 2007, interview and the November 29, 2007, interview.  Accordingly, evidence was introduced as to these two interviews.  However, the government

2

indicated that it does not intend to introduce any statements made by Mr. Cottier during either of the January 30, 2008, interviews.  Accordingly, no evidence was introduced regarding the January 30, 2008, interviews.  As to the earlier interviews, the court finds the following facts.

Mitchell Pourier has been a special agent with the BIA for approximately 21 years.  On September 27, 2007, he was notified of a report of an assault on Gladys Byrd.  Agent Pourier met with Ms. Byrd at the Pine Ridge hospital to interview her.  Ms. Byrd indicated that Mr. Cottier was responsible for her injuries.  Tribal officers other than Mr. Pourier subsequently arrested Mr. Cottier and he was placed in custody at the Kyle Correctional Facility.

At approximately 10:55 a.m. on October 3, 3007, while Mr. Cottier was still in tribal custody on tribal charges stemming from the same facts as this federal indictment, Agent Pourier interviewed Cottier.  This was the first time Agent Pourier had had any contact with Mr. Cottier.  Agent Pourier knew that the tribal charges Mr. Cottier was being held on were related to the September 27 assault allegation, but he did not know any other details about those tribal charges.  Agent Pourier did not ask Mr. Cottier if he had a lawyer representing him on the tribal charges.  No evidence was introduced at the hearing as to whether Mr. Cottier enjoyed a right to counsel under tribal law, whether he had made an initial appearance in tribal court, what the tribal charges were, what the elements of the tribal charges were, and whether Mr. Cottier was

represented in tribal court by any professional or lay counsel.

Agent Pourier met with Mr. Cottier in a small room in the booking area where visitation is allowed with inmates.  Some trustees from the jail were in the hallway sweeping and mopping and were occasionally within hearing of the conversation between Agent Pourier and Mr. Cottier.  Otherwise, Agent Pourier and Mr. Cottier were alone in the booking area.

Agent Pourier introduced himself, identified himself as a federal BIA agent, and showed Mr. Cottier his badge.  Agent Pourier indicated to Mr. Cottier that he was there to interview him about Ms. Byrd's allegations that Cottier had assaulted her.

Prior to beginning the interview, Agent Pourier read Mr. Cottier his Miranda rights from a United States Department of the Interior form.  That form provided as follows:

**Before we ask you any questions, it is my duty to advise you of your rights**

1) You have the right to remain silent.  Do you understand this right?
Yes [defendant's initials]          No ____

2) Anything you say can be used against you in court, or other proceedings.  Do you understand this right?
Yes [defendant's initials]          No ____

3) You have the right to consult with an attorney before making any statement or answering questions, you may also have him present during questioning.  Do you understand this right?
Yes [defendant's initials]          No ____

4

    4)     You may have an attorney appointed by the court to represent you if you cannot afford to obtain one otherwise. Do you understand this right?
Yes _[defendant's initials]_        No _____

    5)     If you decide to answer any questions, with or without a lawyer, you still have the right to stop the questioning at any time, or stop the questioning for the purpose of consulting a lawyer.  Do you understand this right?
Yes _[defendant's initials]_        No _____

    6)     Do you understand all of the rights that I have explained to you?
Yes _[defendant's initials]_        No _____

    7)     Are you willing to waive your rights and talk with me?
Yes _[defendant's initials]_        No _____

<u>See</u> Exhibit 2.

After Agent Pourier read this form out loud to Mr. Cottier, he then gave the form to Mr. Cottier and allowed him to read it himself.  Mr. Cottier indicated that he understood each individual statement of his rights on the form by verbally so indicating and by initialing each statement accordingly. After reading the entire form, he indicated that he understood his rights and wished to waive those rights and speak to Agent Pourier.  Mr. Cottier and Agent Pourier then signed the form.  <u>See</u> Exhibit 2.  Agent Pourier ascertained at the beginning of the interview that Mr. Cottier had obtained his General Equivalency Diploma and had attended approximately two years of post-high-school education.

Agent Pourier then proceeded to interview Mr. Cottier, who denied the allegations entirely, placing the blame for the assault of Ms. Byrd on his girlfriend.  The interview lasted approximately 40 to 45 minutes.  The interview was not recorded by video or audio recording device.  Agent Pourier took handwritten notes during the interview from which he prepared a summary report of the interview.  See Exhibit 1.

Agent Pourier did not specifically tell Mr. Cottier that he was potentially subject to felony charges in federal court, nor did Agent Pourier attempt to predict what the potential sentence for any federal charges might be.

Agent Pourier did not administer a test of any kind to Mr. Cottier to determine whether he was under the influence of any drugs or alcohol or whether he was physically or mentally disabled.  Agent Pourier did not ask Mr. Cottier if he was suffering from any physical or mental impairments or whether he was under the influence of any chemicals.  Agent Pourier testified that Mr. Cottier's demeanor and attitude were calm, cooperative, alert, and at all times he exhibited normal behavior and responses.  At the time Agent Pourier interviewed Mr. Cottier, Mr. Cottier had been continuously in custody for approximately six days.  At the conclusion of the interview, Mr. Cottier told Agent Pourier that he would like to take a polygraph test to show that he was telling the truth.

Following the October 3, 2007, interview, Agent Pourier contacted Agent Charles Cresalia with the FBI and related the information he had discovered during his investigation of the assault on Ms. Byrd, including the interview with Mr. Cottier.  On November 29, 2007, at approximately 11:30 a.m.,  while Mr. Cottier was still in custody on the tribal charges related to the assault, Agent Cresalia and Agent Pourier met with Cottier at the Pine Ridge jail.  Agent Cresalia has been an FBI agent for approximately 20 years.

Agent Cresalia met with Mr. Cottier in a conference room used at the jail for contact visits between inmates and visitors.  This room had windows in it and passing guards within the jail may have looked in during the interview. Agent Cresalia introduced himself to Mr. Cottier and told him that he was with the "FBI."  Agent Cresalia also showed Mr. Cottier his FBI credentials.  Agent Cresalia told Mr. Cottier that he was there to interview Mr. Cottier regarding the assault allegations.  Mr. Cottier indicated that he recognized Agent Pourier. Although Agent Cresalia knew that Mr. Cottier was in custody on tribal charges that also stemmed from the September 27, 2007, assault of Ms. Byrd, he did not inquire of Mr. Cottier whether he had a lawyer representing him on these tribal charges.

Agent Cresalia produced an "Advice of Rights" form and asked Mr. Cottier to read the form out loud.  See Exhibit 4.  Mr. Cottier did so without any difficulty reading and without making any mistakes.

7

The form contained the following advisement of rights:

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions.
You have the right to have a lawyer with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present.

See Exhibit 4.

Both Agent Cresalia and Mr. Cottier signed the advice of rights form after Mr. Cottier read it aloud.  Id.  Agent Pourier also signed the form.  Id. Mr. Cottier indicated that he understood his rights and would waive his rights and speak to Agent Cresalia.  Agent Cresalia asked Mr. Cottier about his education and Mr. Cottier indicated that he had his GED from the Job Corps in Montana and that he had attended a year at Bearabou Community College and a year at Western Vo-Tech.  Mr. Cottier was 38 years old at the time of the interview and had previously been incarcerated in prison.  See Exhibit 3.

Agent Cresalia then proceeded to interview Mr. Cottier.  Mr. Cottier again denied any responsibility for assaulting Ms. Byrd, and instead placed the

8

blame for the assault on his girlfriend.  Mr. Cottier repeated his assertion that
he wanted to take a polygraph test to prove that he was not lying.  Agent
Cresalia took handwritten notes during this interview and, from those notes
and his memory, prepared a summary of the interview.  See Exhibit 3.  The
interview was not recorded by video or audio recording device.  The interview
concluded at approximately 1:00 p.m.

     At no time during Mr. Cottier's interactions with Agent Cresalia did Agent
Cresalia observe any outward indication that Mr. Cottier was under the
influence of alcohol or drugs, that he was tired or sleep-deprived, or that he
was "out of it" in any way.  Agent Cresalia described Mr. Cottier as normal,
alert, and cooperative.  Mr. Cottier understood the questions asked and was
appropriately responsive.  Agent Cresalia testified that, on November 29, 2007,
he had no doubt that Mr. Cottier understood his rights and voluntarily and
intelligently agreed to waive those rights.

     Agent Cresalia never administered any tests to Mr. Cottier to ascertain
his level of physical or mental functioning or to determine if he had any
chemical substances in his system.  He did not ask Mr. Cottier if he was
suffering from the effects of sleep deprivation or from any effects of any
medication or chemical substances.  At no time did Agent Cresalia use any
coercive tactics with Mr. Cottier, threaten him, or make any physical contact
with him.

Agent Cresalia did not specifically advise Mr. Cottier that he faced potential felony charges in federal court.  Likewise, Agent Cresalia did not tell Mr. Cottier  what the potential sentencing consequences of any federal charges might be.

At the conclusion of the interview, Agent Cresalia asked Mr. Cottier if he would agree to repeat his statement in summary fashion so that Agent Cresalia could make an audio recording of the statement.  Mr. Cottier said no. Mr. Cottier similarly declined Agent Cresalia's request to make a hand-written statement of what he had told Agent Cresalia orally.  The grand jury indicted Mr. Cottier on the present charges on May 22, 2008.

## DISCUSSION

**A.   <u>Miranda</u> Argument as to October 3, 2007, and November 29, 2007 Interviews**

Mr. Cottier moves to suppress statements made to Agent Pourier and Agent Cresalia during the interviews that took place while he was in tribal custody on October 3, 2007, and November 29, 2007, respectively.  The grounds urged for suppression are that the statements were taken in violation of the protections afforded by <u>Miranda</u>.  Mr. Cottier argues that both Agent Pourier and Agent Cresalia provided incomplete and inaccurate <u>Miranda</u> warnings by failing to advise Mr. Cottier that he could face federal charges. Mr. Cottier also argues that the waiver of his <u>Miranda</u> rights was not knowing, intelligent, or voluntary because of the following factors:  he did not

10

understand that his statements could subject him to federal charges; he was not "well educated in legal matters"; he was not accompanied by counsel; he was not tested for the presence of narcotics or alcohol in his system; and he was "young, in jail, and not legally sophisticated."[2]

The government resists Mr. Cottier's motion to suppress his October 3, 2007, and November 29, 2007, statements, arguing that neither Agent Pourier nor Agent Cresalia violated Mr. Cottier's <u>Miranda</u> rights. The government does not dispute that these interviews took place while Mr. Cottier was in custody and that the law enforcement agents initiated the questioning. Thus, the government recognizes that, because Mr. Cottier was subject to custodial interrogation, Agent Pourier and Agent Cresalia were required to provide <u>Miranda</u> warnings to Mr. Cottier and to secure Mr. Cottier's waiver prior to questioning.[3] However, the government maintains that the <u>Miranada</u> warnings

---

[2]The court notes that–as to these first two interviews–Mr. Cottier does not argue that his statements were involuntary, that is, that they were "extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." <u>United States v. LeBrun</u>, 363 F.3d 715, 724 (8th Cir. 2004) (rehearing *en banc*) (quoting <u>Simmons v. Bowersox</u>, 235 F.3d 1124, 1132 (8th Cir. 2001)). The only argument Mr. Cottier raises that a statement was involuntary was as to the January 30, 2008, interview, which, as discussed earlier in the body of this report, the government does not intend to introduce. As Mr. Cottier does not argue that the first two statements were coerced, and as there is no evidence of coercion on the part of Agent Pourier or Agent Cresalia, the court will not address it in this discussion.

[3]A <u>Miranda</u> warning is required prior to questioning whenever two conditions are present: (1) the suspect is being interrogated and (2) the

given by the agents were complete and accurate because they were not required to advise Mr. Cottier of the possibility of federal charges or the potential penalties for any federal charges.  The government asserts that Mr. Cottier understood his <u>Miranda</u> rights and validly waived his rights prior to questioning on both occasions.

### 1.    Whether the <u>Miranda</u> Advisement was Complete and Accurate

The holding in <u>Miranda</u> "is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning." <u>United States v. Griffin</u>, 922 F.2d 1343, 1347 (8th Cir. 1990) (citing <u>Miranda</u>, 384 U.S. at 444).  <u>Miranda</u> warnings protect an individual's Fifth Amendment privilege against self-incrimination by "ensuring that a suspect knows that he may chose not to talk to law enforcement, to talk only with counsel present, or to discontinue talking at any time." <u>Colorado v. Spring</u>, 479 U.S. 564, 574 (1987).

Mr. Cottier argues that the advisement of <u>Miranda</u> warnings was inaccurate and incomplete because neither agent specifically advised him that he faced potential federal charges.  Mr. Cottier has not favored the court with a

---

suspect is in custody.  <u>Unites States v. Flores-Sandoval</u>, 474 F.3d 1142, 1146 (8th Cir. 2007).  The government does not take issue with the fact that Mr. Cottier was both in custody and being interrogated on October 3 and November 29, 2007.

single citation to a single case that supports the proposition that <u>Miranda</u>, or the Fifth Amendment on which <u>Miranda</u> is premised, requires police to tell suspects of the particular charges they may face or the penalties they may face in the event of conviction.

The Eighth Circuit has rejected the argument "that <u>Miranda</u> requires a specific warning on the potential sentencing consequences of waiving the right to remain silent." <u>United States v. Johnson</u>, 47 F.3d 272, 277 (8th Cir. 1995). The <u>Miranda</u> Court required that, prior to custodial interrogation, a suspect must be advised "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." <u>Miranda</u>, 384 U.S. at 445. "[T]here are no magic words that automatically satisfy <u>Miranda</u>'s constitutional concerns. Instead, the appropriate inquiry is whether the warning that [defendant] received reasonably conveyed his constitutional rights as required by <u>Miranda</u>." <u>Thai v. Mapes</u>, 412 F.3d 970, 977 (8th Cir. 2005) (citations omitted). Because the <u>Miranda</u> Court "did not prescribe an exact format or postulate the precise language that must be used in advising a suspect of his constitutional right to remain silent..., the substance and not the form of the warnings should be of primary importance." <u>Tucker v. United States</u>, 375 F.2d 363, 369 (8th Cir. 1967).

The advisement of rights given in this case encompassed everything required by Miranda.  The agents were not under any legal obligation to tell Mr. Cottier that federal charges may be filed or to inform Mr. Cottier of the possible penalties for those charges.  The court notes, further, that the reason for the rule that interrogators do not have to tell suspects of the charges they are going to be facing and the exact penalties for those charges is easily understood:  until the investigation is complete, it is nearly impossible for police to determine what federal charges, if any, are supported by the evidence and what penalties could result, especially in view of the fact that the Miranda advisement takes place *before* the defendant makes a statement to police.  The court concludes that both Agent Pourier and Agent Cresalia accurately and adequately advised Mr. Cottier of his rights prior to questioning.

### 2.    Whether Mr. Cottier's Miranda Waiver Was Valid

Mr. Cottier argues that the waiver of his Miranda rights was not voluntary, knowing, or intelligent.  Whether Mr. Cottier's statements should be suppressed pursuant to the rule in Miranda depends on whether he effectuated a valid waiver of his Miranda rights prior to making statements to Agent Pourier and Agent Cresalia.

It is the government's burden to prove that Mr. Cottier's waiver was voluntary, knowing, and intelligent.  United States v. Caldwell, 954 F.2d 496, 508 (8th Cir. 1992).  "If the interrogation continues without the presence of an

14

attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475. The government must prove that a waiver was voluntary, knowing, and intelligent by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986).

Whether Mr. Cottier effectively waived his Miranda rights requires two inquiries:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

"Only if the 'totality of circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Jones, 23 F.3d at 1313. Examination of the totality of circumstances includes, but is not limited to, such considerations as the "background, experience, and conduct" of the defendant. Jones, 23 F.3d at 1313 (quoting United States v. Barahona, 990 F.2d 412, 418 (8th Cir. 1993)).

### a.   Whether Mr. Cottier's Waiver was Voluntary

With regard to the inquiry of voluntariness, "[i]n considering whether a confession was voluntary, the determinative question is whether the confession was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). "Absent evidence that [defendant's] will [was] overborne and his capacity for self-determination critically impaired *because of* coercive police conduct," a waiver of Miranda rights will be considered voluntary. Spring, 479 U.S. at 574 (emphasis supplied). The same analysis applies to determining whether a defendant's confession under the Fifth Amendment or Miranda waiver were voluntary. See United States v. Makes Room For Them, 49 F.3d 410, 415 (8th Cir. 1995) (a court must consider the conduct of the police when determining whether defendant's will was overborne with regard to either his confession or his Miranda waiver).

The court must look to the totality of the circumstances, "including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure." Id. "Coercive official activity is a necessary predicate to a finding that a statement is not voluntary. The fifth amendment privilege against self-incrimination is not concerned with other types of psychological pressures. An incriminating statement is not involuntary unless extorted from

16

the accused by means of coercive activity." <u>United States v. Goudreau</u>, 854 F.2d 1097, 1099 (8th Cir. 1988) (citations omitted).

The Supreme Court has indicated that the physical and mental state of the defendant is relevant to the inquiry as to what constitutes "coercion." <u>See</u> <u>Spring</u>, 479 U.S. 564.  Under the totality of circumstances test, the defendant's characteristics are relevant to the extent that the police knew or should have known of those characteristics and deliberately exploited them.  <u>See</u> <u>Blackburn</u> <u>v. Alabama</u>, 361 U.S. 199 (1960).  In other words, although police coercion is *required* before a statement can be found involuntary, the defendant's mental status is considered in deciding *whether* police coercion existed.  See <u>Connelly</u>, 479 U.S. at 164 ("as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus.  But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' ")

In <u>Spring</u>, the defendant had been told that police wanted to interrogate him about some firearms offenses.  <u>Spring</u>,479 U.S. at 566-567.  The police advised the defendant of his <u>Miranda</u> rights, which he waived.  <u>Id.</u>  During the course of the interrogation, the police questioned the defendant about his involvement in a murder.  <u>Id.</u> at 567.  The defendant later argued that the

17

waiver of his <u>Miranda</u> rights was "compelled" because he was not told at the inception that he would be questioned about the murder.  <u>Id.</u> at 573.  The Court rejected this argument, stating that, "[h]is allegation that the police failed to supply him with certain information does not relate to any of the traditional indicia of coercion:  'the duration and conditions of detention..., the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance or self-control.' "  <u>Id.</u> at 574 (quoting <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961)); <u>see also</u> <u>United States v. Kilgore</u>, 58 F.3d 350, 353 (8th Cir. 1995) (court held that the defendant's confession was voluntary even if he "was confused and confessed to the crime on the mistaken belief that he had been promised leniency (or even if he had been promised some form of leniency)").

In a similar vein, the Eight Circuit has held that a defendant's "[l]ack of awareness of the potential adverse impact of [his] statements is not sufficient in itself to invalidate a waiver" of <u>Miranda</u> rights.  <u>United States v. Peck</u>, 161 F.3d 1171, 1174 (8th Cir. 1998).

In <u>Makes Room for Them</u>, the Eighth Circuit rejected a defendant's argument that both his confession and <u>Miranda</u> waiver were involuntary due to his lower-than-average intelligence.  <u>Makes Room for Them</u>, 49 F.3d at 415. The defendant contended that his limited intellectual abilities made him more susceptible to having his will overborne.  <u>Id.</u>  The court rejected this argument,

finding that, "[a]lthough age, education, and experience are factors in the voluntariness analysis, they are not dispositive." Id.  The court further stated:

> We may assume for the sake of argument that Makes Room[for Them] had a somewhat diminished capacity to resist pressure to waive his rights and confess.  However, this is one of two factors; we must also consider the conduct of the police.  We simply do not find the requisite coercive activity here.

Id. (internal citations omitted); see also United States v. LeBrun, 363 F.3d 715, 726 (8th Cir. 2004) (rehearing en banc) ("Generally, [the court] ha[s] concluded that where the defendant possessed at least average intelligence, then his inculpatory statements were not compelled.") (citing United States v. Gallardo-Marquez, 253 F.3d 1121, 1123-24 (8th Cir. 2001) (concluding confession was voluntary where defendant was of average intelligence and had prior contact with law enforcement); United States v. Astello, 241 F.3d 965, 968 (8th Cir. 2001) (concluding that confession of an eighteen-year-old boy was voluntary where he had completed the eleventh grade and possessed a capacity to understand what was being said during the interview); Simmons v. Bowersox, 235 F.3d 1124, 1134 (8th Cir. 2001) (concluding that confession was voluntary where defendant had full scale I.Q. of 88); but see Wilson v. Lawrence County, 260 F.3d 946, 949 n.4 (8th Cir. 2001) (finding confession to be involuntary where defendant was mentally retarded, his overall mental abilities were in the bottom two percent of the population, and testimony revealed that he could be "talked into anything")).

19

Further, "neither exhaustion nor intoxication will necessarily invalidate a Miranda waiver." United States v. Korn, 138 F.3d 1239, 1240 (8th Cir. 1998). The Eighth Circuit "has declined to adopt a per se rule of involuntariness founded solely on intoxication." United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006). "Instead, 'the test is whether these mental impairments caused the defendant's will to be overborne.' " Id. (citing United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990)); see also Unites States v. Contreras, 372 F.3d 974, 977-78 (8th Cir. 2004) (although defendant had used methamphetamine the evening before and marijuana the day he consented to a Miranda waiver, the court found that the waiver was voluntary because there was no evidence of police coercion and because defendant appeared lucid at the time and understood questions asked of him); United States v. Phillips, 506 F.3d 685, 687 (8th Cir. 2007) (although defendant had ingested four ecstasy pills and alcohol thirty-eight hours before being questioned by police, the court found that (1) his Miranda waiver was voluntary because there was no evidence of police coercion, deception, or intimidation, and (2) his waiver was knowing and intelligent because there was adequate time for any impairment to dissipate and defendant appeared lucid, cooperative, and aware of his rights during the interview).

In this vein, the court notes that no evidence was introduced at the hearing on this motion that would support Mr. Cottier's assertion that he might

have been intellectually impaired, under the influence of any chemical substance, or sleep-deprived.  Rather, the only evidence that was adduced at the hearing was that Mr. Cottier appeared normal and responsive in every way, and that Agent Pourier and Agent Cresalia failed to submit Mr. Cottier to a battery of tests in order to rule these conditions out prior to interviewing him.

Again, Mr. Cottier has cited not a single legal authority to support the idea that the agents in this case were under a duty to perform such comprehensive testing on Mr. Cottier prior to interviewing him, particularly where, as here, there was no outward indication that Mr. Cottier was impaired in any way.  The court also notes that the fact that Mr. Cottier had been continuously incarcerated for several days prior to the interview with Agent Pourier and for approximately six weeks prior to the interview with Agent Cresalia.  His incarceration also supports the conclusion that he was not under the influence of any chemical substance, absent facts pointing to a different conclusion.

In considering the totality of the circumstances surrounding the October 3, 2007, and November 29, 2007, interviews of Mr. Cottier, there is simply no evidence that Agent Pourier or Agent Cresalia used any coercive tactics to overbear Mr. Cottier's will or critically impair his ability for self-determination.  Nor is there any evidence that Mr. Cottier had a particular mental or physical infirmity that the agents were aware of and exploited during

21

the interview.  The Eighth Circuit has recognized that every interrogation of a suspect contains some element of coercion or pressure to elicit a confession. See Astello, 241 F.3d at 967.  Examining "traditional indicia of coercion" leads to the conclusion that there were none in this case.  Both agents advised Mr. Cottier of his rights and on both occasions Mr. Cottier indicated that he understood his Miranda rights.  Neither Agent Pourier nor Agent Cresalia made any threats, physical or psychological, or promises to induce Mr. Cottier to waive his Miranda rights and make incriminating statements.  The agents did not mislead Mr. Cottier as to the nature of the interview.  Mr. Cottier knew, at the start of the interview, that both agents were federal agents and wanted to discuss the allegations made by the victim.  The interviews were of unexceptional duration, with the first lasting 45 minutes and the second lasting 90 minutes.  Thus, "this is not a situation where the officers wore down a defendant's will with persistent questioning over a considerable length of time."  LeBrun, 363 F.3d at 726.  Finally, although the interviews took place in jail, this fact alone does not make the interview so coercive as to vitiate the voluntariness of Mr. Cottier's waiver.  Based on the testimony presented at the suppression hearing, the court concludes that neither the conduct of Agent Pourier and Agent Cresalia while questioning Mr. Cottier nor the circumstances and conditions surrounding the questioning, e.g., the custodial environment, rose to the level of police coercion.

Further, Mr. Cottier did not appear to be overly susceptible to police coercion, even if such coercion had occurred.  Mr. Cottier was 38years old at the time of the interview and he had had prior experience with the criminal justice system as he made reference to a prior prison sentence he had served. He had two years of post-high-school education.  During the interview, Mr. Cottier appeared to be mentally sound, cooperative, capable of understanding the agents' questions and responding appropriately, and not suffering from the effects of alcohol or drug use.  There is no evidence that Mr. Cottier was under the influence of alcohol or any controlled substance; he had been incarcerated for at least several days preceding the interviews.  There is no evidence that Mr. Cottier suffered from any other physical or mental impairment that diminished his free will.

Mr. Cottier was sufficiently clear-headed and assertive to refuse to provide a tape-recorded or hand-written statement.  This fact also shows that Mr. Cottier was not so intimidated by either Agent Cresalia or the environment of the interview that he could no longer exercise free choice.  In light of the uncontradicted evidence of Mr. Cottier's sound mental and physical status, the court concludes that he voluntarily waived his <u>Miranda</u> rights and voluntarily made statements to both agents during the two interviews.

23

**b.     Whether Mr. Cottier's Waiver was Knowing and Intelligent**

Mr. Cottier argues that those same factors that rendered his waiver involuntary also rendered his waiver unintelligent and unknowing.  "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right..." <u>Thai</u>, 412 F.3d at 977.  Although police coercion is a necessary predicate to finding that a waiver was involuntary, it is *not* determinative on the separate issue of whether the waiver was knowing and intelligent.  <u>United States v. Turner</u>, 157 F.3d 552, 555 (8th Cir. 1998).

"As a general matter ... an accused who is admonished with the warnings prescribed by this Court in <u>Miranda</u> has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one..."  <u>United States v. Garlewicz</u>, 493 F.3d 933, 936 (8th Cir. 2007).  "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."  <u>Moran</u>, 475 U.S. at 422-423.

24

The Court in <u>Miranda</u> explained further:

> At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. For those unaware of the privilege, the warning is needed simply to make them aware of it– the threshold requirement for an intelligent decision as to its exercise.  More important, such a warning is an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere. ...

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege.

<u>Miranda</u>, 384 U.S. at 467-468, 469.

In <u>Turner</u>, police officers stopped Turner's vehicle after observing erratic driving.  <u>Turner</u>, 157 F.3d at 553.  Officers administered field sobriety tests to Turner and concluded that he was under the influence of some drug other than alcohol.  <u>Id.</u> at 554.  After arresting Turner and advising him of his <u>Miranda</u> rights, officers transported him to jail and conducted a urine test, which came back positive for phencyclidine (PCP).  <u>Id.</u>

Officers again advised Turner of his <u>Miranda</u> rights and Turner signed a waiver form, initialing each admonition.  <u>Id.</u>  During the interview, Turner appeared cooperative; however, he subsequently exhibited bizarre behavior.  <u>Id.</u>

25

Upon examination, several psychiatrists diagnosed Turner with a having a PCP-induced psychotic disorder and an intelligence quotient ("IQ"), in the low-average to borderline range.  Id.  Turner moved to suppress the statements he made to law enforcement, arguing that, because of his low IQ, PCP intoxication, and mental illness, he did not have the mental capacity to intelligently and knowingly waive his constitutional rights.  Id.

The court rejected this argument, finding the following facts persuasive: Turner was cooperative during the interview; he reviewed and initialed each admonition of the waiver form; he agreed to answer questions; he gave accurate information; and he appeared intelligent enough to understand his rights.  Id. at 555; see also North Carolina v. Butler, 441 U.S. 369, 373 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver...").  The Turner court concluded that Turner's waiver of his Miranda rights was knowing and intelligent.  Turner, 157 F.3d at 557.

Mr. Cottier's mental and physical status was certainly no worse than that of the defendant in Turner.  Like the defendant in Turner, Mr. Cottier was cooperative and responsive during the interviews with Agent Pourier and Agent Cresalia and was intelligent enough to remember and recount details of the alleged incident.  Further, as stated earlier, the advisement of rights given by the agents fully and fairly described Mr. Cottier's Miranda rights and did so in

plain and simple language.  Mr. Cottier acknowledged that he understood his rights and agreed, in writing, to waive them.

The fact that neither agent warned Mr. Cottier that his responses could subject him to federal charges does not vitiate his <u>Miranda</u> waiver.  <u>Miranda</u> does not require "a specific warning on the potential sentencing consequences of waiving the right to remain silent."  <u>United States v. Johnson</u>, 47 F.3d 272, 277 (8th Cir. 1995).  Nor does the Constitution require "that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment."  <u>Spring</u>, 479 U.S. at 574; <u>see also</u> <u>United States v. Sanders</u>, 341 F.3d 809, 817 (8th Cir. 2003) (a defendant "must show more than that he misunderstood the extent of his waiver or its ramifications..."); <u>United States v. Peck</u>, 161 F.3d 1171, 1174 (8th Cir. 1998) ("Lack of awareness of the potential adverse impact of statements is not sufficient in itself to invalidate a waiver of the right to counsel.").  The court finds that Mr. Cottier's <u>Miranda</u> waivers on both occasions were knowing and intelligent.

**B.    Whether Mr. Cottier's Sixth Amendment Right to Counsel Was Violated at Either 2007 Interview**

Mr. Cottier's brief is less than clear as to whether he is also arguing that his Sixth Amendment right to counsel was violated by Agent Cresalia and Agent Pourier interviewing him without his counsel on his tribal charges present.  Because Mr. Cottier's brief and some of his questions at the hearing appear to raise a Sixth Amendment issue, the court will discuss it herein.

27

The right to counsel arising under the Sixth Amendment is triggered only upon the initiation of formal charges against the defendant.  See Rothgery v. Gillespie County, ___ U.S. ___, 128 S. Ct. 2578, 2583 (2008); McNeil v. Wisconsin, 501 U.S. 171, 177-178 (1991).  "If police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."  Michigan v. Jackson, 475 U.S. 625, 636 (1986).

The rule that a defendant's Sixth Amendment right to counsel does not obtain until formal charges are initiated against him is not "mere formalism," but rather a recognition that, once formal charges are brought, the " 'adverse positions of the government and defendant have solidified,' and the accused 'finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.' " Rothergery, 128 S. Ct. at 2583 (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1984)).  The "accused has the right to depend on counsel to act as a medium between him and governmental authorities."  United States v. Killeaney, 2007 WL 4459348 at *5 (D.S.D. 2007); Jackson, 475 U.S. at 632; Maine v. Moulton, 474 U.S. 159, 176 (1985).

In this case, the federal government did not initiate formal charges against Mr. Cottier until May 22, 2008.  Thus, Agent Pourier and Agent Cresalia's interviews in the fall of 2007 took place before formal charges were in

place and, hence, before Mr. Cottier had any Sixth Amendment right to counsel.  However, Agent Cresalia and Agent Pourier interviewed Mr. Cottier after the *tribal* charges had been initiated.

The Sixth Amendment right to counsel is offense specific.  <u>McNeil</u>, 501 U.S. at 175-176.  Therefore, a defendant who is formally accused in a court proceeding with rape charges can be questioned by police regarding a factually and legally unrelated robbery without counsel present.  <u>Id.</u>  Also, under double jeopardy analysis, the federal government and the tribal government are two separate  sovereigns.  <u>Heath v. Alabama</u>, 474 U.S. 82, 88 (1985).  The question arises then, when a defendant is charged with separate offenses by tribal government and by the federal government, is this the "same offense" because it arises out of the same facts, or is it a different offense because each offense is being prosecuted by a different sovereign?

The Eighth Circuit has declined to rely solely on double jeopardy analysis in determining whether a defendant's right to counsel under the Sixth Amendment was violated when federal officials interrogate a defendant after the

29

initiation of tribal proceedings.  <u>Red Bird</u>, 287 F.3d at 714-715.[4]  Instead, the Eighth Circuit evaluates a number of other factors.

First, the Eighth Circuit looks to whether the tribal and federal cases charge the same offense by determining whether each offense requires proof of a fact which the other does not.  <u>Red Bird</u>, 287 F.3d at 715 (citing <u>Texas v. Cobb</u>, 532 U.S. 162, 173 (2001) (quoting <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932))).  Then the court looks to whether the defendant had a right to counsel in tribal proceedings, whether the defendant asserted his right to counsel in tribal proceedings, whether the tribal proceedings were adversarial in nature, and whether the federal interrogator was aware of the pending tribal charges.  <u>United States v. Plumman</u>, 409 F.3d 919, 926-927 (8th

_____

[4]There is a split of authority among the circuits as to whether, in cases involving an allegation of a Sixth Amendment violation, the <u>Texas v. Cobb</u> decision incorporates the full panoply of double jeopardy analysis–specifically the dual sovereign analysis–or whether only the <u>Blockburger</u> test applies.  This would be of significance where, for example, state and federal officials charged a defendant with offenses having identical elements.  If the defendant had already appeared in state court and asserted his Sixth Amendment right to counsel, and federal officials subsequently interrogated the defendant before the institution of federal charges with the same essential elements as the state charges, courts disagree on whether this would constitute a Sixth Amendment violation.  <u>See</u> <u>United States v. Coker</u>, 433 F.3d 39, 43 (1st Cir. 2005).  The Second Circuit does not apply the dual sovereign analysis to allegations of Sixth Amendment violations.  <u>United States v. Mills</u>, 412 F.3d 325 (2d Cir. 2005).  The Eighth Circuit is in accord with this approach at least where the other sovereign is an Indian tribe.  <u>See</u> <u>Red Bird</u>, 287 F.3d at 715.  The First and Fifth Circuits apply the dual sovereign analysis to Sixth Amendment violations.  <u>See</u> <u>Coker</u>, 433 F.3d at 43; <u>United States v. Avants</u>, 278 F.3d 510 (5th Cir. 2002).

Cir. 2005); <u>Red Bird</u>, 287 F.3d at 714-715.  <u>See also</u> <u>United States v. Doherty</u>, 126 F.3d 769, 772 (6th Cir. 1997) (no Sixth Amendment violation occurs where tribal proceeding was nonadversarial).  In addition, the court considers whether the defendant was represented in tribal proceedings by a licensed attorney or a lay advocate.  <u>See</u> <u>United States v. Tools</u>, 2008 WL 259524 at * 6-7 (S.D.D. 2008); <u>Killeaney</u>, 2007 WL 4459348 at *5-7; <u>United States v. Dupris</u>, 422 F. Supp. 2d 1061, 1068 (D.S.D. 2006) (holding that Sixth Amendment right of defendant did not attach until defendant was charged in federal court because defendant's appearance in tribal court with lay representation on charges arising out of the same incident was not an appearance with "counsel" as contemplated by the Sixth Amendment).  <u>See also</u> <u>United States v. Whitefeather</u>, 2006 WL 763204 (D. Minn. 2006) (same).

The burden of proving a Sixth Amendment violation rests with the defendant.  <u>Kuhlman v. Wilson</u>, 477 U.S. 436, 459 (1986); <u>Moore v. United States</u>, 178 F.3d 994, 999 (8th Cir. ), <u>cert. denied</u>, 528 U.S. 943 (1999). Therefore, a failure by the defendant to introduce evidence from which a Sixth Amendment violation can be established results in denial of the defendant's motion.  <u>Moore</u>, 178 F.3d at 999.

Here, Mr. Cottier has failed to sustain his burden of proving that his Sixth Amendment right to counsel was violated.  Mr. Cottier introduced no evidence at all as to the elements of the tribal offense and the elements of the

federal offense, whether he had a right to counsel in tribal court under the tribal constitution, whether he had invoked that right, and, if so, whether his representative on the tribal charges was a licensed attorney or a lay advocate. Furthermore, although Mr. Cottier proved that both federal agents were aware that Mr. Cottier was facing related tribal charges at the time they interviewed him, there was no proof that the agents knew any details of those charges or that the agents were working in concert with tribal authorities to secure a conviction.  For all these reasons, the court concludes that Mr. Cottier did not prove a violation of his right to counsel when Agent Pourier and Agent Cresalia interrogated him on separate occasions in the fall of 2007.

## C.    The Two January 30, 2008, Statements

It is the government's burden to prove that Mr. Cottier was administered his Miranda warnings on both occasions in which he gave statements on January 30, 2008, or to demonstrate that no such warnings were required, and to prove that Mr. Cottier made a voluntary, knowing, and intelligent waiver of his Miranda rights if they were required.  Connelly, 479 U.S. 168; Miranda, 384 U.S. at 475; Caldwell, 954 F.2d at 508.  The government elected not to introduce any evidence as to the events and circumstances surrounding Mr. Cottier's statements given on January 30, 2008.  Accordingly, the court will grant that portion of Mr. Cottier's motion seeking to suppress the statements he made to Agent Cresalia and Agent Kenser on January 30, 2008.

32

## CONCLUSION

Based on the evidence adduced at the hearing, the above findings of fact, and the law, the court recommends that Mark Cottier's motion to suppress [Docket 30] be granted as to both interviews which occurred on January 30, 2008, and denied as to the statements he made on October 3, 2007, and on November 29, 2007.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated January 28, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

33